Benny GONZÁLEZ–RÍOS, Plaintiff

v.

**HEWLETT PACKARD P.R. CO., et al., Defendants.**

No. 11–1418 (DRD).

United States District Court, D. Puerto Rico.

Sept. 30, 2012.

Luis Vivaldi–Oliver, Luis Vivaldi-Oliver Law Office, Mayaguez, PR, for Plaintiff.

Fernando A. Baerga–Ibanez, Curbelo, Baerga & Quintana Law Office, Carolina Santa Cruz–Sadurni, Baerga & Quintana Law Offices, Rosa M. Cruz–Niemiec, Cruz Niemiec & Vazquez, San Juan, PR, for Defendants.

## OPINION AND ORDER

DANIEL R. DOMINGUEZ, District Judge.

On December 30, 2010, Plaintiff filed the instant complaint in the Puerto Rico Court of First Instance, Aguadilla Part, alleging that defendants had wrongfully denied payment of certain disability benefits under a disability benefits plan covering Plaintiff as a participant. After some procedural incidents, including the removal of Plaintiff's complaint to this Court, Plaintiff's filing of a motion for partial summary judgment, and the Court's dismissal of the

same, co-defendant Life Insurance Company of North America's ("LINA") filed a *Motion for Judgment on the Administrative Record for Judicial Review* (Docket No. 51) and co-defendant Hewlett Packard Caribe B.V., Co.'s ("HP Caribe") filed a *Motion to Dismiss Under Fed.R.Civ.P. 12(b)(6) and/or for Summary Judgment and Memorandum in Support Thereof,* both of which were referred to Magistrate Judge Sylvia Carreño-Coll for a report and recommendation ("R & R") (Docket Nos. 67 and 73).[1]

LINA is the named fiduciary for adjudicating claims for benefits under the Hewlett Packard B.V.'s Insurance Plan (the "Plan"), the short-term disability benefit plan covering Plaintiff's claim (Docket No. 51–2, page 43). In the *Motion for Judgment on the Administrative Record for Judicial Review,* LINA requests that this Court conclude that LINA's coverage determination was supported by the administrative record and that the Court affirms LINA's decision to deny benefits. (Docket No. 51).

HP Caribe is Plaintiff's former employer. In the hybrid motion to dismiss and/or motion for summary judgment, HP Caribe alleges that the complaint is factually insufficient to substantiate a claim against HP Caribe, requesting dismissal of Plaintiff's claim. (Docket No. 52).

Magistrate Judge Carreño-Coll issued her R & R on September 19, 2012, recommending that the Court grant both motions and that Plaintiff's claim be dismissed with prejudice. (Docket No. 73). Plaintiff opposed the R & R's conclusions as to the applicable standard of review and

that Plaintiff was afforded full, fair and complete administrative claims procedure. (Docket No. 75).

Upon review of Magistrate Judge's R & R, the Court hereby **ADOPTS** the R & R, as supplemented herein, and **GRANTS** LINA's *Motion for Judgment on the Administrative Record for Judicial Review* and HP Caribe's *Motion to Dismiss Under Fed.R.Civ.P. 12(b)(6) and/or for Summary Judgment and Memorandum in Support Thereof,* **DISMISSING WITH PREJUDICE** Plaintiff's claims.

## I. MAGISTRATE'S REPORT AND RECOMMENDATION

The Court may refer dispositive motions to a United States Magistrate Judge for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). *See also* Fed. R.Civ.P. 72(b); D.P.R. Civ. R. 72(a); and *Mathews v. Weber,* 423 U.S. 261, 96 S.Ct. 549, 46 L.Ed.2d 483 (1976). Nonetheless, an adversely affected party may contest the Magistrate Judge's Report and Recommendation by filing its objections to the recommendations made. Fed.R.Civ.P. 72(b). In such respect, 28 U.S.C. § 636(b)(1), in pertinent part, provides that

> any party may serve and file written objections to such proposed findings and recommendations as provided by rules of court. A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made. A judge of the court may accept, reject, or modify, in

---

1. The Court cautions the parties that our case management order does not authorize hybrid motions utilizing both Fed.R.Civ.P. 12(b)(6) (motion to dismiss) and 56 (motion for summary judgment) as both have distinct standards. *See Rivera–Santiago v. Abbott Pharmaceutical PR, Ltd.,* 608 F.Supp.2d 216, 223

(D.P.R.2008). *See also Jorge v. Rumsfeld,* 404 F.3d 556, 558 n. 2 (1st Cir.2005). However, as explained later in the instant Opinion and Order, the Court treated HP Caribe's *Motion to Dismiss Under Fed.R.Civ.P. 12(b)(6) and/or for Summary Judgment and Memorandum in Support Thereof* as a motion to dismiss.

whole or in part, the findings or recommendations made by the magistrate judge.

■ "Absent objection, . . . [a] district court ha[s] a right to assume that [the affected party] agree[s] to the magistrate's recommendation." *Templeman v. Chris Craft Corp.*, 770 F.2d 245, 247 (1st Cir. 1985), cert. denied, 474 U.S. 1021, 106 S.Ct. 571, 88 L.Ed.2d 556 (1985). Additionally, "failure to raise objections to the Report and Recommendation waives that party's right to review in the district court and those claims not preserved by such objections are precluded upon appeal." *Davet v. Maccarone*, 973 F.2d 22, 30–31 (1st Cir.1992); *see alsoHenley Drilling Co. v. McGee*, 36 F.3d 143, 150–51 (1st Cir. 1994) (holding that objections are required when challenging findings actually set out in a magistrate's recommendation, as well as the magistrate's failure to make additional findings); *Lewry v. Town of Standish*, 984 F.2d 25, 27 (1st Cir.1993) (stating that "[o]bjection to a magistrate's report preserves only those objections that are specified"); *Borden v. Sec. of H.H.S.*, 836 F.2d 4, 6 (1st Cir.1987) (holding that appellant was entitled to a de novo review, "however he was not entitled to a de novo review of an argument never raised").

■ The Court, in order to accept unopposed portions of the Magistrate Judge's Report and Recommendation, needs only satisfy itself that there is no "plain error" on the face of the record. *See Douglass v. United Servs. Auto, Ass'n*, 79 F.3d 1415, 1419 (5th Cir.1996) (*en banc*) (extending the deferential "plain error" standard of review to the un-objected to legal conclusions of a magistrate judge); *see alsoNettles v. Wainwright*, 677 F.2d 404, 410 (5th

Cir.1982) (*en banc*) (appeal from district court's acceptance of un-objected to findings of magistrate judge reviewed for "plain error"); *Nogueras–Cartagena v. United States*, 172 F.Supp.2d 296, 305 (D.P.R.2001) (finding that the "Court reviews [unopposed] Magistrate's Report and Recommendation to ascertain whether or not the Magistrate's recommendation was clearly erroneous") (adopting the Advisory Committee note regarding FED. R.CIV. P. 72(b)); *Garcia v. I.N.S.*, 733 F.Supp. 1554, 1555 (M.D.Pa.1990) (finding that "when no objections are filed, the district court need only review the record for plain error").

■ An adversely affected party may "contest the [m]agistrate [j]udge's report and recommendation by filing objections 'within ten[2] days of being served' with a copy of the order." *United States v. Mercado Pagan*, 286 F.Supp.2d 231, 233 (D.P.R.2003) (citing 28 U.S.C. § 636(b)(1)). If objections are timely filed, the district judge shall make a *de novo* determination of those portions of the report or specified findings or recommendation to which an objection is made. *See Bonefont–Igaravidez v. International Shipping Corp.*, 659 F.3d 120 (1st Cir.2011); and *Iverson v. City of Boston*, 452 F.3d 94, 98 (1st Cir. 2006).

In the instant case, Plaintiff objects the conclusions reached by the Magistrate Judge as to R's conclusions as to the applicable standard of review and that Plaintiff was afforded full, fair and complete administrative claims. Hence, the Court will review the R & R *de novo*.

## II. THE UNCONTESTED FACTS[3]

[Plaintiff] was an employee of [HP Caribe] until July 21, 2009. In that employ-

---

2. Per Local Rule 72(d), parties may object a magistrate judge's report and recommendation within fourteen (14) days after being served with the order.

3. The Court hereby incorporates the uncontested facts as stated in the R & R (Docket No.

ment, he was covered by both a Short Term and Long Term Disability Plan ("STD" and "LTD" Plans, respectively), and LINA was the fiduciary for each. On February 23, 2009, [Plaintiff] underwent back surgery and was paid STD benefits from February 3 to May 15 of that year. On June 2, 2009, LINA for the first time denied [Plaintiff] benefits. The letter informing [Plaintiff] included the STD Plan's definition of "disability" and explained what materials had been reviewed. *See* Docket No. 51–4, at 45. The letter explained that the statement of [Plaintiff's] attending physician did not explain how [Plaintiff's] injuries prevented him from performing his job functions. *See id.* Finally, the letter explained what additional information [Plaintiff] should provide on appeal. *See id.* at 46. LINA determined that [Plaintiff's] physician's assessment did not rule out [Plaintiff] performing his duties. [Plaintiff] returned to work on July 2, 2009, and continued until he left for the final time on July 21, 2009.

On July 22, 2009, [Plaintiff] made a second request for STD benefits, submitting further notes from his physician. Those notes say that [Plaintiff] had chronic pain but did not recommend specific work restrictions. *See* Docket No. 51–5, at 43. On February 11, 2010, LINA again denied [Plaintiff's] claim, citing lack of explanation regarding how his condition was preventing him from doing his work. *See* Docket No. 51–4, at 21. [Plaintiff] appealed on March 16, 2009, and this time submitted the notes from a July 19, 2009, office visit with a neurologist. [Plaintiff's] appeal was denied on April 30, 2010, for the same reasons as his prior requests. *See id.* at 9–11. After some further communica-

73, pages 160–62) and will only supplement the same with additional information should

tions—but no new information from [Plaintiff]—the determination was made final and the matter closed. [The instant] suit followed.

(Docket No. 73, pages 160–62) (Footnotes omitted).

### III. JUDGMENT ON THE ADMINISTRATIVE RECORD

#### A. Standard of Review

■■■ Under ERISA's civil enforcement provision, Section 502(a)(1)(B), judicial review of a benefit entitlement decision may be · the subject of two separate standards. *Eusebio Cotto Villegas v. Fed. Express Corp.*, 468 F.Supp.2d 293, 306 (D.P.R.2006) (stating the two possible standards of review are arbitrary and capricious or *de novo* ). The arbitrary and capricious standard applies when a reading of the plan in question indicates a clear grant of discretionary authority to the administrator in determining the eligibility for benefits of a participant or beneficiary. *See Terry v. Bayer Corp.*, 145 F.3d 28, 37 (1st Cir.1998). Thus, should the plan provide "the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan," the court must apply the deferential "arbitrary and capricious" standard of review. *Firestone Tire and Rubber Co. v. Bruch*, 489 U.S. 101, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989); *Leahy v. Raytheon Co.*, 315 F.3d 11, 15 (1st Cir.2002). "This standard means that the administrator's decision will be upheld if it is reasoned and supported by substantial evidence in the record." *Doyle v. Paul Revere Life Ins. Co.*, 144 F.3d 181, 184 (1st Cir.1998) (quoting *Assoc. Fisheries of Maine, Inc. v. Daley*, 127 F.3d 104, 109 (1st Cir.1997)); *see*

it be considered necessary.

*Vlass v. Raytheon Emp. Disability Trust,* 244 F.3d 27, 30 (1st Cir.2001). "Evidence is 'substantial' if it is reasonably sufficient to support a conclusion." *Vlass,* 244 F.3d at 30 (citations omitted). Further, under the arbitrary and capricious standard, the reviewing court must determine whether "the aggregate evidence, viewed in the light most favorable to the non-moving party, could support a rational determination that the plan [fiduciary] acted arbitrarily in denying the claim for benefits." *Leahy,* 315 F.3d at 18. "Moreover, the existence of contradictory evidence does not, in itself, make the administrator's decision arbitrary." *Id.* (citations omitted).

The Supreme Court has directed reviewing federal courts to "consider whether the [agency] decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment." *Bowman Transp., Inc. v. Arkansas–Best Freight Syst., Inc.,* 419 U.S. 281, 285, 95 S.Ct. 438, 42 L.Ed.2d 447 (1974); *see also Citizens To Preserve Overton Park, Inc. v. Volpe,* 401 U.S. 402, 415–17, 91 S.Ct. 814, 28 L.Ed.2d 136 (1971). The standard of review is a "narrow" one, requiring that a court not "substitute its judgment for that of the [administrator]...." *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.,* 463 U.S. 29, 103 S.Ct. 2856, 77 L.Ed.2d 443 (1983).

 Nonetheless, where such a clear grant of discretionary authority is not apparent, the standard of review is *de novo. Firestone,* 489 U.S. at 115, 109 S.Ct. 948; *see also Rodriguez–Abreu v. Chase Manhattan Bank, N.A.,* 986 F.2d 580, 583 (1st Cir.1993). Under a *de novo* review, the task "is to independently weigh the facts and opinions in the administrative record to determine whether the claimant has met his burden of showing that he is disabled within the meaning of the policy. [Reviewing courts should] grant no deference

to the administrators' opinions or conclusions." *Scibelli v. Prudential Ins. Co. of America,* 666 F.3d 32, 40 (1st Cir.2012) (citing *Richards v. Hewlett–Packard Corp.,* 592 F.3d 232, 239 (1st Cir.2010), cert. denied, —— U.S. ——, 131 S.Ct. 798, 178 L.Ed.2d 545 (2010)).

**B. Discussion**

 The Magistrate Judge concluded that the Court's review of LINA's determination "should be under the arbitrary and capricious standard" as, pursuant to the Plan documents, "the Insurance Company [was appointed] as the named fiduciary for adjudicating claims for benefits under the Plan, and for deciding any appeals of denied claims." (Docket No. 51–2, page 43). The applicable terms of the documents at issue in the instant complaint state that "[t]he Insurance Company shall have the authority, in its discretion, to interpret the terms of the Plan, to decide questions of eligibility for coverage or benefits under the Plan, and to make any related findings of fact." *Id.* LINA is the entity referred to as the "Insurance Company" in the Plan documents, pursuant to the definitions and certificate cover page of the Plan documents (Docket No. 51–2, pages 41 and 27, respectively). Thus, based on the First Circuit's applicable precedent, a district court should apply the "arbitrary and capricious" standard in a judicial review of the named fiduciary's adjudication of a benefits claim. *See Firestone Tire* and *Terry v. Bayer, supra.*

As to Plaintiff's eligibility for the disability benefits claimed, LINA determined that Plaintiff "did not prove that he was completely disabled as defined by the STD Plan as of July 21, 2009." (Docket No. 51, ¶ 14). Further, Plaintiff's allegation in the claim for benefits, ~~as~~and also in the instant complaint, is the "he was unable to do the tasks of [his] job due to his

condition and extreme pain," and "that [s]ince January 2, 2009, [he] has been unable to do his work tasks as an Electronics Technician as a consequence of his pains and ailments." (Docket No. 51, ¶¶ 8 & 13). Nonetheless, Plaintiff failed to proffer additional medical evidence for LINA's examination of his benefits claim of any aggravation of his symptoms that would render him disabled[4] pursuant to the terms of the Plan and, therefore, eligible for the benefits claimed. (Docket No. 51, ¶ 14). Plaintiff also failed to allege such aggravation of his symptoms and to proffer such additional evidence in the instant case for the Court to examine.

As to the determination to deny Plaintiff's benefits claim, LINA alleged to having thoroughly reviewed Plaintiff's claim for benefits and of the documents and information available in their records (Docket No. 51, ¶ 15). LINA's denial of disability benefits was based "on the opinion of professionals, who reviewed the medical data submitted by Plaintiff and did not find objective evidence to support Plaintiff's claim for STD benefits." Id. In support of the denial of benefits, LINA proffered evidentiary documents included in their administrative record (including approximately one dozen letters sent during the period of March 2, 2009 thru July 15, 2010) showing LINA had attempted to obtain additional medical information to make a determination on Plaintiff's claim and giving Plaintiff reasonable terms to comply with LINA's requests (sometimes 30 days, other times "as soon as possible" (Docket No. 51–4, page 31–34)). Nevertheless, Plaintiff's responses were insufficient. (Docket No. 51–4). LINA also submitted copies of the letters sent to Plaintiff's physician, Dr. Juan A. Lameiro, during the period of September to October of 2009, requesting the following additional information "in order to review [Plaintiff's] eligibility for STD benefits": (1) "complete copies of office visit notes from **July 21, 2009** to present"; (2) "Hospital Intake/ Discharge summary, and/or Operative Report(s)"; (3) "Test results/findings"; (4) "Treatment Plan"; (5) "Restrictions and limitations that prevent(ed) patient from returning to work"; and (6) "Estimated return to work date/ date patient was released to return to work." (Docket No. 51–4, pages 23–33, 36–39) (Emphasis in original). Nonetheless, such information was not provided to LINA, particularly the physician's diagnosis that Plaintiff was disabled and unable to perform his job after he had recovered from surgery.[5]

---

4. Following are the relevant definitions ~~pursuant to the terms of the Plan,~~ as defined in the STD Plan Certificate:

> Definition of Disability/ Disabled
> An Employee is Disabled if, because of Injury or Sickness, is unable to earn more than 80% of his or her Covered Earnings.
> (...)
> Disability Benefits
> [LINA] will pay Disability Benefits if an Employee becomes Disabled while covered under this Policy. A Disabled Employee must satisfy the Benefit Waiting Period and be under the Appropriate Care of a Physician. Satisfactory proof of Disability must be provided to [LINA], at the Employee's expense, before benefits will be paid.
> (Docket No. 51–2, pages 5 & 8, respectively).

5. Below is an excerpt of LINA's letter to Plaintiff of June 2, 2009 (Docket No. 51–4, pages 45–46):

> [A]n explanation of your functionality and how your functionality capacity prevented you from performing your occupation beyond May 15, 2009 was not clinically and physically supported. Please note that an out of work note and/or treatment alone does not necessarily equate to a presence of a disabling condition or a decreased level of functionality.
> In order to be eligible for Short Term Disability benefits, you must meet the definition of disability as defined in the policy. **Our records do not show clinically demonstrated limitations and restrictions to support a finding that you are unable to per-**

The letters also show that LINA notified and explained Plaintiff the determination reached in Plaintiff's claim, the manner in which his claim was reviewed, the documents and information reviewed to make such determination,[6] the reasons for denying his claim, the applicable appeals procedure should Plaintiff disagree with LINA's determination,[7] and the manner in which the original determination was reviewed. (Docket No. 51–4, pages 13–15, 20–22).

■ Based on this information, the Magistrate Judge concluded that, pursuant to the administrative record, "LINA's determination that [Plaintiff] was not disabled was therefore neither arbitrary nor capricious." (Docket No. 73, page 169).

In his opposition to the R & R, Plaintiff alleges that the appropriate standard for reviewing LINA's determination is a review *de novo.* Plaintiff's contention is based on the alleged lack of a "plan rules document delegating [HP Caribe's] fiduciary responsibility to LINA" (Docket No. 75, page 4). However, the Court is of the opinion that the clear language of the Plan documents previously cited in the R & R and in the instant Opinion and Order were insufficient to demonstrate LINA's authority over the adjudications of claims.

In examining the record as a whole of the instant case, the Court concludes that because the Plan documents indicate a clear grant of discretionary authority to LINA in determining the eligibility for benefits of a participant, the district court should review LINA's denial of benefits under the arbitrary and capricious standard. The Court further concludes that *Plaintiff failed to proffer the necessary medical documents and information, both at the disability benefits claim level, as well as at the instant judicial review level, showing that he was disabled pursuant to the terms of the Plan and eligible to receive the benefits claimed. The Court also concludes that* there was sufficient evidence in the administrative record to support LINA's determination to deny Plaintiff's benefits claim, that Plaintiff was given ample opportunity to provide information as to his compliance with the benefits claimed, and that LINA's determination was neither arbitrary nor capricious. Thus, the Court agrees with the R & R's conclusion as to the applicable standard for the Court's review of LINA's determination and concluding that LINA's denial of the benefits Plaintiff claimed was neither arbitrary nor capricious.

## IV. MOTION TO DISMISS [8]

### A. Standard of Review

Federal Rule of Civil Procedure 8(a) requires plaintiffs to provide "a short and plain statement of the claim showing that

---

**form the duties of your occupation.** Based on the current medical documentation on file, you do not meet the definition of disability, and we must deny your claim for benefits beyond May 15, 2009." (Our emphasis).

6. The determination letter dated February 11, 2010 states that LINA examined the clinical records of Dr. Juan A. Lameiro (Plaintiff's physician) for Plaintiff's visits on July 21, 2009 and October 2, 2009. The letter also includes a brief summary of LINA's conclusion after evaluating each document. (Docket No. 51–4, pages 20–21).

7. For example, the letter of April 30, 2010 includes a section entitled "What If You Don't Agree With The Claim Decision?" explaining the procedure and applicable terms for submitting an administrative appeal review request. (Docket No. 51–4, pages 14–15).

8. The Court will treat HP Caribe's *Motion to Dismiss Under Fed.R.Civ.P. 12(b)(6) and/or for Summary Judgment and Memorandum in Support Thereof* (Docket No. 52) as a motion to dismiss, as the Court will not consider materials outside of Plaintiff's complaint.

the pleader is entitled to relief." Fed. R.Civ.P. 8(a)(2). Under *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007) a plaintiff must "provide the grounds of his entitlement [with] more than labels and conclusions." Thus, a plaintiff must now present allegations that "nudge [Plaintiffs] claims across the line from conceivable to plausible" in order to comply with the requirement of Rule 8(a). *Id.* at 570, 127 S.Ct. 1955; *see e.g. Ashcroft v. Iqbal,* 556 U.S. 662, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009).

When considering a motion to dismiss, the Court's inquiry occurs in a two-step process under the current context-based "plausibility" standard established by *Twombly* and *Iqbal, supra.* "Context based" means that a Plaintiff must allege sufficient facts that comply with the basic elements of the cause of action. *See Iqbal,* 556 U.S. at 677–678, 129 S.Ct. 1937 (concluding that plaintiff's complaint was factually insufficient to substantiate the required elements of a *Bivens* claim, leaving the complaint with only conclusory statements). Further, the Court must "accept as true all of the allegations contained in a complaint[,]" discarding legal conclusions, conclusory statements and factually threadbare recitals of the elements of a cause of action. *Maldonado v. Fontanes,* 568 F.3d 263, 268 (1st Cir.2009) (quoting *Iqbal, supra* ) (internal quotation omitted).

Under the second step of the inquiry, the Court must determine whether, based upon all assertions that were not discarded under the first step of the inquiry, the complaint "states a plausible claim for relief." *Id.* This second step is "context-specific" and requires that the Court draw from its own "judicial experience and common sense" to decide whether a plaintiff has stated a claim upon which relief may be granted, or, conversely, whether dis-

missal under Rule 12(b)(6) is appropriate. *Id.*

Thus, "[i]n order to survive a motion to dismiss, [a] plaintiff must allege sufficient facts to show that he has a plausible entitlement to relief." *Sánchez v. Pereira–Castillo,* 590 F.3d 31, 41 (1st Cir. 2009). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]' 'that the pleader is entitled to relief.'" *Iqbal,* 556 U.S. at 679, 129 S.Ct. 1937 (quoting Fed.R.Civ.P. 8(a)(2)). Furthermore, such inferences must be at least as plausible as any "obvious alternative explanation." *Id.* at 682, 129 S.Ct. 1937 (citing *Twombly,* 550 U.S. at 567, 127 S.Ct. 1955). "A plaintiff is not entitled to 'proceed perforce' by virtue of allegations that merely parrot the elements of the cause of action." *Ocasio–Hernández v. Fortuño–Burset,* 640 F.3d 1, 12 (1st Cir.2011) (citing *Iqbal,* 556 U.S. at 680, 129 S.Ct. 1937).

The First Circuit has cautioned against equating plausibility with an analysis of the "likely success on the merits," affirming that the plausibility standard assumes "pleaded facts to be true and read in plaintiff's favor" "even if seemingly incredible." *Sepúlveda–Villarini v. Dep't of Educ. of P.R.,* 628 F.3d 25, 30 (1st Cir.2010) (citing *Twombly,* 550 U.S. at 556, 127 S.Ct. 1955); *Ocasio–Hernández,* 640 F.3d at 12 (citing *Iqbal,* 556 U.S. at 681, 129 S.Ct. 1937); *see Twombly,* 550 U.S. at 556, 127 S.Ct. 1955 ("[A] well-pleaded complaint may proceed even if it appears that a recovery is very remote and unlikely.") (internal quotation marks omitted); *see OcasioHernández,* 640 F.3d at 12 (citing *Twombly,* 550 U.S. at 556, 127 S.Ct. 1955) ("[T]he court may not disregard properly pled factual allegations, 'even if it strikes a savvy judge that actual proof of those facts is improbable.'"). Instead, the First Circuit has em-

phasized that "[t]he make-or-break standard ... is that the combined allegations, taken as true, must state plausible, [but] not a merely conceivable, case for relief." *Sepúlveda–Villarini*, 628 F.3d at 29.

■ However, a complaint that rests on "bald assertions, unsupportable conclusions, periphrastic circumlocutions, and the like" will not survive a motion to dismiss. *Aulson v. Blanchard*, 83 F.3d 1, 3 (1st Cir.1996). Similarly, as applied to merely "parrot[ing] the elements of the cause of action" (*OcasioHernández*, 640 F.3d at 12), such elements must be adorned with factual assertions. *Peñalbert–Rosa v. Fortuño–Burset*, 631 F.3d 592 (1st Cir.2011). "Specific information, even if not in the form of admissible evidence, would likely be enough at [the motion to dismiss] stage; pure speculation is not." *Id.* at 596; *see Méndez Internet Mgmt. Servs. v. Banco Santander de P.R.*, 621 F.3d 10, 14 (1st Cir.2010) (The *Twombly* and *Iqbal* standards require District Courts to "screen[ ] out rhetoric masquerading as litigation.").

**B. Discussion**

■ After examining the Plaintiff complaint, the Magistrate Judge concluded that there was only one claim against HP Caribe as to alleged violations to ERISA for their failure to comply with the publication of the plan documents to participants. (Docket No. 1, ¶ 11). The Magistrate Judge followed the First Circuit precedent in *Watson v. Deaconess Waltham Hosp.*, 298 F.3d 102, 113 (1st Cir.2002), requiring that a plaintiff makes allegations of "exceptional circumstances such as bad faith, active concealment, or fraud" in order to properly assert a claim under 29 U.S.C. § 1132(a)(1)(B) to recover benefits due to him under the terms of the plan. Thus, finding that Plaintiff made no allegation of "bad faith or other exceptional circumstances" in the complaint (Docket No. 73,

page 169), the Magistrate Judge concluded that Plaintiff failed to state a plausible claim against HP Caribe. Consequently, the Magistrate Judge recommended that the Court consider HP Caribe's *Motion to Dismiss Under Fed.R.Civ.P. 12(b)(6) and/or for Summary Judgment and Memorandum in Support Thereof* (Docket No. 52) as a motion to dismiss, and that the same be granted dismissing Plaintiff's cause of action against HP Caribe.

Plaintiff opposed the Magistrate Judge's conclusions alleging only that Plaintiff was not provided a copy of the Plan documents "prior to his claim." (Docket No. 75, page 2). Nonetheless, Plaintiff did not contradict nor proffer any evidence of exceptional circumstances to state a plausible claim to recover benefits due to him under the terms of the plan or for the alleged violation of the publication requirements under ERISA.

The publication requirements of ERISA at 29 U.S.C. §§ 1021–31 contains specific requirements as to the information (i.e., the plan documents) that a plan administrator must provide participants, when such information is to be provided, and the alternative methods for complying with such requirements. Plan participants have a cause of action under 29 U.S.C. § 1132(a)(1)(A) against plan administrators who fail to comply with a request to provide any such information. Section § 1132(c)(1) specifies the relief available to such plaintiffs, allowing for penalties of $100 per day and "such other relief as [the court] deems proper." These penalties are limited, however, as the court may only order relief if the plan administrator fails to provide the appropriate documentation within thirty days after a participant requests it. *Id.*

In his complaint, Plaintiff included the general allegation that he was not provided the Plan documents, but he failed to

plead factual allegations as to the specific dates he requested the plan documents and HP Caribe's failure to comply with such requests. The Court finds that Plaintiff's complaint is lacking in factual assertions and pertinent evidence as to HP Caribe's alleged ERISA violation to survive HP Caribe's motion to dismiss or to justify the imposition of the penalties provided in 29 U.S.C. § 1132(c)(1).

Based on the above, the Court agrees with the Magistrate Judge's conclusion as to ~~Plainitff's~~ Plaintiff's failure to state a plausible cause of action against HP Caribe. Plaintiff's claim against HP Caribe must be dismissed.[9]

## V. CONCLUSION

For the reasons set forth above, the Court hereby **ADOPTS** the Magistrate Judge's Report and Recommendation (Docket No. 74), as supplemented herein, and **GRANTS** LINA's motion for judgment on the administrative record (Docket No. 51) and Hewlett Packard's motion to dismiss (Docket No. 52). Judgment shall be entered accordingly.

## IT IS SO ORDERED.

9. Should the Court have treated HP Caribe's motion as a motion for summary judgment, Plaintiff's claim of against HP Caribe would also fail as, in the Court's consideration of the affidavits and testimony provided by HP Caribe as to the publication of the Plan documents to Plan participants, including Plaintiff himself (Docket No. 52–4, ¶¶ 4–8), HP Caribe would have been able to show there was no genuine dispute of any material fact as to HP Caribe. Hence, the case would have ended in the same place. *See Trans–Spec Truck Serv., Inc. v. Caterpillar, Inc.*, 524 F.3d 315, 321 (1st Cir.2008) (stating "[a]t the discretion of the district court, a motion to dismiss may be converted to a motion for summary judgment if the court chooses to consider materials outside the pleadings in making its ruling."). *See also Prescott v. Higgins*, 538 F.3d 32, 40 (1st Cir.2008) (citing *Thompson v. Coca–Cola*

## REPORT AND RECOMMENDATION

SILVIA CARREÑO–COLL, United States Magistrate Judge.

This is a suit by Plaintiff Benny González–Ríos against various defendants alleging that he was wrongly denied disability benefits.[1] *See* Docket No. 1–4. Before the Court are two motions filed by the defendants in this case, Docket Nos. 51, 52, each of which was referred to the undersigned for report and recommendation by the presiding district judge. Docket No. 67. The motions come before us in significantly different postures, and we take them up separately below, ultimately recommending that both be granted.

## I. LINA's Motion for Judgment on the Administrative Record

Plaintiff claims to have become disabled while working for Co–Defendant Hewlett Packard Caribe B.V., Co. Among the parties he sues here is the Life Insurance Company of North America ("LINA"), which answered his complaint as fiduciary of the disability plan under which he was covered. When González applied for disability benefits, it was LINA that denied them. Before the Court now is LINA's

*Co.*, 522 F.3d 168, 175 (1st Cir.2008)); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); and *Calero–Cerezo v. U.S. Dep't of Justice*, 355 F.3d 6, 19 (1st Cir.2004) (as to the standard for resolving a motion for summary judgment).

1. González's original complaint, filed in Commonwealth court, did not specify a source of law for its causes of action. *See* Docket No. 1–4. Co–Defendant Life Insurance Company of North America removed the suit to federal court, however, because it related to González's benefits under his employer's benefits plan, which is covered by ERISA. *See* Docket No. 1. González never sought to remand the suit to Commonwealth court.

Motion for Judgment on the Administrative Record, which asks us to affirm its decision based on the record that it had available. *See* Docket No. 51.

LINA argues that, while its motion is presented in the form of a motion for summary judgment,[2] because this is an ERISA case, the proper course is to review the administrative record and determine whether LINA's coverage determination was supported by the administrative evidence. *See Orndorf v. Paul Revere Life Ins. Co.*, 404 F.3d 510, 517 (1st Cir.2005) (holding that a court should make a review of the plan fiduciary's decision). In making this review, we may not look at evidence outside of the administrative record[3] *Id.* at 519 ("Not only do we reject [Plaintiff's] claim that it was error for the court to exclude such extra-record medical evidence, but we hold it would have been error for the court to have admitted such evidence."). Because González's coverage plan gave the fiduciary discretionary authority to determine eligibility, LINA encourages us to apply an arbitrary and capricious standard in reviewing its benefits determination. *See Brigham v. Sun Life of Canada*, 317 F.3d 72, 80–81 (1st Cir.

2003) (citing *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989) ("[A] denial of benefits ... is to be reviewed under a de novo standard *unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits* ...." (emphasis added))). And, indeed, the Short Term Disability Plan does contain such language. *See* Docket No. 51–2, at 43 ("The Plan Administrator has appointed [LINA] as the named fiduciary for adjudicating claims for benefits under the Plan, and for deciding any appeals of denied claims. [LINA] *shall have the authority, in its discretion, to interpret the terms of the Plan, to decide questions of eligibility for coverage ..., and to make any related findings of fact.*" (emphasis added)). Thus, review should be under the arbitrary and capricious standard.[4]

As to the content of the administrative record itself, we accept in its entirety LINA's statement of uncontested facts, *see* Docket No. 50–1, because González has failed to properly contest any of it. L. Civ. R. 56(e). González's opposing statement of material facts essentially ignores the administrative record; instead, it repeats,

---

2. *Orndorf v. Paul Revere Life Ins. Co.*, 404 F.3d 510, 517 (1st Cir.2005) ("[I]n an ERISA case where review is based only on the administrative record before the plan administrator and is an ultimate conclusion as to disability to be drawn from the facts, summary judgment is simply a vehicle for deciding the issue.").

3. González suggests that four questions of fact outside of—and logically preceding our review of—the administrative record require us to deny the motion: (1) whether LINA is correct about the identity of the plan that covered González; (2) whether any of the supposed plans provided a disability benefit of 60%; (3) whether a 1986 disability plan "provides disability from the general assets of the employer"; and (4) whether González received a full and fair review of his claims by

LINA if he was not provided with all of the plan documents. Docket No. 60, at 7–8. As to (1), the Court has already ruled that no controversy exists as to the plan's name. *See* Docket No. 53, at 3 n. 1 (ordering Plaintiff to refer to the disability plan as "Hewlett Packard B.V.'s Insurance Plan," the same plan that LINA says covered González). As to (2) and (3), we fail to see the questions' relevance to a determination of whether González's benefits were improperly denied. And as to (4), the administrative record discussed below shows clearly that González received a fair review, and that he was told what he needed to prove and where to look for the relevant information.

4. Notably, González makes no arguments whatsoever about the proper standard of review.

many times over, the already-rejected argument regarding the plan's name[5] *See* Docket No. 60–1. The uncontested facts are as follows: González was an employee of Hewlett Packard until July 21, 2009. In that employment, he was covered by both a Short Term and Long Term Disability Plan ("STD" and "LTD" Plans, respectively), and LINA was the fiduciary for each. On February 23, 2009, González underwent back surgery and was paid STD benefits from February 3 to May 15 of that year. On June 2, 2009, LINA for the first time denied González benefits. The letter informing González included the STD Plan's definition of "disability" and explained what materials had been reviewed. *See* Docket No. 51–4, at 45. The letter explained that the statement of González's attending physician did not explain how González's injuries prevented him from performing his job functions.[6] *See id.* Finally, the letter explained what additional information González should provide on appeal. *See id.* at 46. LINA determined that González's physician's assessment did not rule out González performing his duties.[7] González returned to work on July 2, 2009, and continued until he left for the final time on July 21, 2009.

On July 22, 2009, González made a second request for STD benefits, submitting further notes from his physician. Those notes say that González had chronic pain but did not recommend specific work restrictions. *See* Docket No. 51–5, at 43. On February 11, 2010, LINA again denied González's claim, citing lack of explanation regarding how his condition was preventing him from doing his work. *See* Docket No. 51–4, at 21. González appealed on March 16, 2009, and this time submitted the notes from a July 19, 2009, office visit with a neurologist. González's appeal was denied on April 30, 2010, for the same reasons as his prior requests. *See id.* at 9–11. After some further communications—but no new information from González—the determination was made final and the matter closed. This suit followed.

As we have said, LINA's benefits determination is properly reviewed under an arbitrary and capricious standard. On arbitrary and capricious review, we ask whether "the aggregate evidence, viewed in the light most favorable to the nonmoving party, could support a rational determination that the plan [fiduciary] acted arbitrarily in denying the claim for benefits." *Leahy v. Raytheon Co.*, 315 F.3d 11, 18 (1st Cir.2002). González doesn't address the administrative review's substance at all, and so he doesn't argue that LINA's decision was arbitrary. We find no reason to suspect arbitrariness either. Instead, our review shows that González was repeatedly explained what showing he needed to make and was given several opportunities to submit medical evidence.[8]

---

5. Where González's opposing statement of facts is not repetitive, it, like his opposition motion, is simply difficult to decipher. And in addition to being repetitive, it frequently cites evidence outside of the administrative record or, the few times it does cite (a single piece) of administrative evidence, it fails to actually contradict the fact it is opposing.

6. The letter reviewed a March 20, 2009, report from González's physician which said that he would be able to return to work on May 16 and that he could perform light duty, including lifting up to 25 pounds. *See* Docket No. 51–6, at 31. A later report, dated May 13, 2009, said that González could work after July 1, 2009, and that he should do light duty, including lifting up to fifteen pounds. *See id.* at 4–5. (González disputes this, but he fails to cite to anything in the administrative record supporting his contention. *See* Docket No. 60–1, at 7.)

7. González's job did not require lifting more than ten pounds. *See* Docket No. 51–5, at 34.

8. LINA explained its reasons for rejecting González's complaint, explained the definition of "disability" it was using, noted the

Nonetheless, what he provided to LINA, though it showed unequivocally that he suffered from chronic pain and some physical restrictions, did not show conclusively that he was totally disabled and unable to perform his job. LINA's determination that Gonzalez was not disabled was therefore neither arbitrary nor capricious. Accordingly, we recommend that LINA's motion for judgment on the administrative record be granted and that González's claims against LINA be dismissed.

## II. Hewlett Packard's Motion to Dismiss or for Summary Judgment

González's complaint, which primarily contests his denial of disability benefits, is aimed first at LINA. But he sued his employer, Hewlett Packard, too, and they've filed a motion to dismiss, or, in the alternative, a motion for summary judgment. *See* Docket No. 52. The motion appends a statement of uncontested facts, and González responds in kind. Nonetheless, because González's allegations against Hewlett Packard are so slim, we will, for simplicity's sake, treat the motion as one under Rule 12(b)(6). See Fed.R.Civ.P. 12(d) (giving the Court the option of excluding extrinsic material presented with a motion to dismiss rather than converting it to a motion for summary judgment).

Only a single paragraph in González's complaint could be read as directed at Hewlett Packard. It alleges that "the Defendants would not provide [González] the documents nor the plan rules needed to be able to apply for [his] benefits effectively." Docket No. 1–4, at ¶ 11. In his opposition to the defendants' motions, which provides no greater detail on Hewlett Packard's alleged misdeeds, González suggests that the failure to provide these documents violated ERISA, though he doesn't tell us what section of ERISA it might have violated. *See* Docket No. 60, at 2.

■ ERISA does require plan administrators like Hewlett Packard to provide covered employees with plan documents. *See, e.g.*, 29 U.S.C. §§ 1021–22 (requiring certain documents be provided to covered employees). But the caselaw makes it quite clear that violations of these provisions do not create causes of action absent a showing of special circumstances, such as bad faith on the part of the plan administrator. *See Andersen v. Chrysler Corp.*, 99 F.3d 846, 859 (7th Cir.1996) ("We have repeatedly held that technical violations of ERISA's notification requirements, without a showing of bad faith, active concealment or detrimental reliance, do not state a cause of action."); *see also Watson v. Deaconess Waltham Hosp.*, 298 F.3d 102, 113 (1st Cir.2002) (following Seventh Circuit precedent). González's complaint makes no allegations of bad faith or other exceptional circumstances. Therefore, no cause of action against Hewlett Packard exists and we recommend that the motion to dismiss, Docket No. 52, be granted and that Gonzalez's claims be dismissed.

## III. Conclusion

For all of the reasons state above, we recommend that LINA's motion for judgment of the administrative record, Docket No. 51, and Hewlett Packard's[9] motion to

---

sources it had reviewed, and suggested what further documentation González should submit in support of his claim. *See* Docket No. 51–4, at 45–46. LINA also informed González that he could get more detailed information on his coverage from his employer, *see id.* at 46, but nothing in the administrative

record suggests he did so. *See also id.* at 20–21. González followed LINA's procedures and submitted what medical evidence he had available, *see* Docket No. 51–8, at 2–3, but it was insufficient to prove that he was disabled.

9. González's complaint sues three Hewlett Packard entities: Hewlett Packard Caribe

**170**

dismiss, Docket No. 52, be GRANTED. We further recommend that González's complaint be DISMISSED WITH PREJUDICE.

IT IS SO RECOMMENDED.

The parties have five business days to file any objections to this report and recommendation. No extensions of time will be allowed. *See* Docket No. 67. Failure to file the same within the specified time waives the right to appeal this report and recommendation. *Henley Drilling Co. v. McGee*, 36 F.3d 143, 150–51 (1st Cir.1994); *United States v. Valencia–Copete*, 792 F.2d 4 (1st Cir.1986).

In San Juan, Puerto Rico, this 19th day of September, 2012.

B.V. Co, which filed the motion under consideration here, as well as Hewlett Packard P.R. Co. and Hewlett Packard Caribe Limited Co. *See* Docket No. 1–4. As the Court has already recognized, however, the latter two entities no longer exist and Hewlett Packard Caribe B.V. Co was González's employer at all relevant times. *See* Docket No. 53, at 3–4.